Corrie Yackulic, WSBA No. 16063
**Corrie Yackulic Law**
110 Prefontaine Place South, Suite 304
Seattle, WA 98104
corrie@cjylaw.com

Rachel Abrams
Angela J. Nehmens
**Levin Simes Abrams LLP**
1700 Montgomery Street,
Suite 250,
San Francisco, CA 94111
P: (415) 426-3000 | F: (415)-426-3001
rabrams@levinsimes.com
anehmens@levinsimes.com

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KARL LORENTSON,<br><br>Plaintiff,<br><br>vs.<br><br>AMAZON.COM INC.; AMAZON.COM SERVICES LLC; EXCLUSIVE 186POWER LLC d/b/a GREEN-TREE EXCLUSIVE; AND DOES 1-50<br><br>Defendants. | **Case No.:**<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW, Karl Lorentson (hereinafter "Plaintiff") by and through his attorneys of record, and for causes of action against the above-named Defendants complains, alleges, and states as follows:

## I.     PARTIES

1.     At all times material hereto, Plaintiff Karl Lorentson was an is a resident of Sandy, Oregon and is domiciled in the State of Oregon.

COMPLAINT AND DEMAND FOR JURY TRIAL
PAGE- 1

2.     At all material hereto, Defendant Amazon.com Inc., was and is a Washington Corporation with its principal place of business located at 410 Terry Avenue North, Seattle Washington.  Its registered agent for service is Corporation Service Company located at 300 Deschutes Way Southwest, Suite 304 Tumwater, Washington 98501.

3.     Upon information and belief, Defendant Amazon is involved in electronic commerce and cloud computing and derives a large portion of its sales for third party vendors such as Defendant Green-Tree.

4.     At all times material hereto, Defendant Amazon.com Services LLC (hereinafter "Amazon Fulfillment") is a Washington Limited Liability Company with its principal place of business located at 410 Terry Avenue North, Seattle, Washington. Its registered agent for service is Corporation Service Company located at 300 Deschutes Way Southwest, Suite 304, Tumwater, Washington 98501.

5.     At all times material hereto, Defendant Exclusive 186Power LLC d/b/a Green-Tree Exclusive (hereinafter "Green-Tree") is a Texas Limited Liability Company with its principal place of business located at 3726 Odessa Street, Dallas, Texas 75212.

6.     Plaintiff sues fictious Defendants DOES 1 through 50 because their names and/or capacities and/or facts showing them to be liable to Plaintiff are not presently known.  Plaintiff will seek leave to amend the Complaint if necessary, to reflect the true names and capacities of such fictitious Defendants when ascertained.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously names Defendants is negligent or responsible in some manner for the events herein alleged.

COMPLAINT AND DEMAND FOR JURY TRIAL
PAGE- 2

## II.    JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332; the Plaintiff and the Defendants are diverse and the amount in controversy exceeds $75,000.00.

8.    Defendant Amazon.com, Inc., at all material times, either directly or through entities promoted, distributed, sold, or otherwise placed into the stream of commerce the rechargeable lithium-ion battery that is the subject of this lawsuit.  The subject battery was sold for use in Oregon, and as a result of the sale, promotion, distribution, placement into the stream of commerce, and/or marketing of such battery, a tort was committed in Oregon.

9.    This Court has personal jurisdiction over Defendant Amazon.com, Inc. because at all material times Defendant Amazon.com, Inc was and is a Washington corporation with its principal place of business located within the state.

10.    Defendant Amazon.com Services, LLC at all material times, worked in concert with Defendant Amazon.com, Inc. to promote, distribute, sell, deliver, or otherwise place into the stream of commerce the rechargeable lithium-ion battery that is the subject of this lawsuit.  The subject battery was sold for use in Oregon, and as a result of the sale, promotion, distribution, placement into the stream of commerce, and/or marketing of such battery, a tort was committed in Oregon.

11.    This Court has personal jurisdiction over Defendant Amazon.com Services, LLC because at all material times Defendant Amazon.com Services, LLC was and is a Washington Limited Liability Corporation with its principal place of business located within the state.

12.    This Court has personal jurisdiction over Defendant Green-Tree because of its systematic and continuous contacts with the State of Washington.  At all material times hereto,

COMPLAINT AND DEMAND FOR JURY TRIAL
PAGE- 3

Defendant Green-Tree is and was a third-party seller on the Amazon platform, and worked in concert with Amazon defendants to promote, sell, deliver, or otherwise place into the stream of commerce the Subject Battery. The Subject Battery was sold on the Amazon platform, and as a result of the sale, promotion, distribution, placement into the stream of commerce, and/or marketing of the Subject Battery, a tort was committed in Oregon.

13.    Venue is proper in this Court because a substantial part of the events or omissions on which the claims asserted herein are based occurred in this District.

### III.    FACTS

**E-Cigarettes**

14.    E-cigarettes, which are also known as e-cigs, vapes, vape pens, and mods (customizable, more powerful vaporizers) are battery operated devices that deliver nicotine through flavoring and other chemicals to users in the form of vapor instead of smoke.[1] They were first patented in 2003 and have been available for sale in the United States since 2007.[2]

15.    E-cigarettes are designed to simulate the act of smoking traditional tobacco, allegedly with less of the toxic chemicals produced by the burning of tobacco leaves and other chemicals contained in traditional, combustible cigarettes.[3] E-cigarettes offer doses of nicotine with a vaporized solution, often referred to as "juice," "e-liquid," or "pods," providing a physical sensation similar to tobacco smoke.

---

[1] *See generally*, *Electronic Cigarettes*, National Institute on Drug Abuse, Rev. March 2018, available at https://www.drugabuse.gov/publications/drugfacts/electronic-cigarettes-e-cigarettes.
[2] McKenna, L., *Electronic Cigarette Fires and Explosions in the United States 2009-2016*, U.S. Fire administration, July 2017 available at https://www.usfa.fema.gov/downloads/pdf/publications/electronic_cigarettes.pdf
[3] *See generally*, *Electronic Cigarettes*, National Institute on Drug Abuse, Rev. March 2018, available at https://www.drugabuse.gov/publications/drugfacts/electronic-cigarettes-e-cigarettes.

COMPLAINT AND DEMAND FOR JURY TRIAL
PAGE- 4

16. Generally, electronic cigarettes operate the same way regardless of the model in that they typically consist of at least three (3) component parts: a tank, a battery that works to heat the juices or e-liquid contained in the tank, and an atomizer that converts the liquid into vapor that the user inhales.

17. E-cigarettes differ from traditional cigarettes in a critical way: the e-cigarette is battery-operated and uses a heating element to produce vapor, and the traditional cigarette has no electronic component. While both products may produce a similar physical sensation, e-cigarettes pose an additional danger - the battery-powered heating element, as well as the battery itself - that can and have caused explosions, fires, and serious injury.

18. E-cigarettes are more dangerous than other products that contain lithium batteries because the e-cigarette is most often designed as a cylindrical device, requiring a lithium-ion battery of a similar shape. When the device malfunctions or fails, the battery can be shot out like a bullet or rocket.[4]

19. At least two deaths have been reported in relation to an exploding e-cigarette.[5]

20. E-cigarettes have become increasingly popular. They have been marketed as smoking-cessation aids and as a healthier alternative to traditional tobacco cigarettes. The selection of products has grown at an extremely rapid rate.

21. Since their introduction into the United States, sales have risen dramatically from approximately $20 million in 2008 to $2.5 billion in 2012. Industry experts predict the e-

---

[4] United States Fire Administration, *Electronic Cigarette Fires and Explosions*, October 2012, at p. 5.
[5] *See* https://www.washingtonpost.com/health/2019/02/05/vape-pen-kills-man-after-exploding-his-mouth/.

COMPLAINT AND DEMAND FOR JURY TRIAL
PAGE- 5

cigarette industry will become an $85 billion business within a decade and surpass the tobacco industry.[6]

22.     Until recently, e-cigarette marketing has been unfettered and unregulated. Whereas tobacco advertisements have been banned on radio and television for more than 40 years, no such restrictions have been instituted in the e-cigarette arena.    Manufacturers, distributors, and sellers of e-cigarettes therefore reach a broader consumer base than the tobacco industry and have the freedom to utilize the same marketing tactics previously employed by big tobacco.   Namely, to tout the supposed health benefits of their products absent scientific and medical data to support such claims; to portray e-cigarette smoking as a harmless pastime on TV, radio, and in print; capitalize on individuals already addicted to nicotine; and/or encourage nicotine newcomers (mainly youths and young adults) to pick up the habit.

23.     Despite advertisements that represent e-cigarettes as a healthier alternative to traditional cigarettes, various articles have concluded that the long-lasting effects of smoking e-cigarette devices are unknown.[7]

24.     In 2017, the United States Fire Administration characterized the "combination of an electronic cigarette and a lithium-ion battery" as a "new and unique hazard" because there is

---

[6] Clarke, T., *Reports of E-Cigarette Injury Jump Amid Rising Popularity, United States Data Show*, Reuters.com. April 17, 2012.

[77] *See e.g.* National Academies of Sciences, Engineering, and Medicine, *Public Health Consequences of E-Cigarettes.* Washington, DC: The National Academies Press, 2018 (characterizing the use of e-cigarettes on public health as "unknown" and conclusively determining e-cigarette smokers are exposed to potentially toxic substances in addition to nicotine).

COMPLAINT AND DEMAND FOR JURY TRIAL
PAGE- 6

"no analogy among consumer products to the risk of a severe, acute injury presented by an e-cigarette."[8]

**Plaintiff's Injury**

25.     Plaintiff began using e-cigarettes in an effort to quit smoking traditional cigarettes.

26.     Plaintiff purchased the subject LG lithium-ion 18650 from Defendants as a power source for his Tesla e-cigarette device.

27.     Amazon.com, Inc., and its subsidiary, Amazon.com Services, LLC, are entities that are involved in the business of selling products, whether for resale, sale, or consumption.  Both Amazon Defendants were directly involved in the sale of the Subject Battery that harmed Plaintiff.

28.     Amazon.com, Inc. and its subsidiary, Amazon.com Services, LLC failed to take any precautions to ensure third party manufacturers and sellers are in good standing in their home country or forum.

29.     Amazon.com, Inc., and its subsidiary, Amazon.com Services, LLC, do not vet manufacturers and their products or third-party sellers and their products to ensure the products it sells are safe.

30.     Amazon.com, Inc., and its subsidiary, Amazon.com Services, LLC, exercise substantial control over third party vendors because they have the sole discretion to suspend, prohibit, or remove and product listing and to withhold payment or terminate the contract with third party vendors.

---

[8] McKenna, L., *Electronic Cigarette Fires and Explosions in the United States 2009-2016*, U.S. Fire administration. July 2017.

COMPLAINT AND DEMAND FOR JURY TRIAL
PAGE- 7

31. Customers are only able to communicate with third party vendors through Amazon.com, Inc., and its subsidiary, Amazon.com Services, LLC, making them the only member of the marketing chain available to Plaintiff for redress.

32. When Plaintiff received the Subject Battery, it did not include any warnings.

33. On or around December 21, 2018, Plaintiff was at work and had the LG lithium-ion 18650 batteries in his jacket pocket. Suddenly and without warning, Plaintiff felt a searing pain in his abdomen and saw orange sparks discharging from his jacket pocket.

34. Plaintiff was able to quickly remove the jacket from his body and extinguish the flames

35. Plaintiff tried running the burn under water to help subdue the pain, but the burns to his abdomen blistered and oozed a clear fluid.

36. Plaintiff went to Sandy Urgent Care located in Sandy, Oregon, where he was treated for first degree burns to his abdomen. He was then referred to the Burn Department at The Oregon Clinic for follow up care and treatment.

37. Plaintiff, an HVAC service technician, was out of work for three weeks while his burns healed.

38. Plaintiff struggled to sit, bend, and stoop for several months after the explosion.

39. Plaintiff has scars that may never fully heal, leaving him with a constant and painful reminder of the explosion.

40. As a result of the battery explosion, Plaintiff sustained severe, permanent physical and emotional injuries.

COMPLAINT AND DEMAND FOR JURY TRIAL
PAGE- 8

## IV.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### *DEFECTIVE DESIGN AND MANUFACTURE*
### *(Against All Defendants)*

41.    Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-40 above.

42.    At all times material hereto, Defendants and each of them were engaged in the business of selling, manufacturing, fabricating, designing, assembling, distributing, inspecting, warranting, leasing, renting, retailing, wholesaling, or advertising electronic cigarette products, including but not limited to 18650 lithium-ion batteries.

43.    Defendants knew or reasonably should have known that consumers would use the Subject lithium-ion 18650 batteries with e-cigarettes, and that consumers would keep said batteries, close to their person in some manner as Plaintiff did here.

44.    The Defendants manufactured, designed, assembled, packaged, tested, fabricated, inspected, marketed, distributed, and sold electronic cigarette products, including but not limited to the Subject lithium-ion 18650 batteries and each of their component parts with defects in both the design, inspection, manufacturing and distribution, which made them dangerous, hazardous and unsafe for their intended use. The design, manufacturing and distribution defects in the said electronic cigarette products, including but not limited to the Subject lithium-ion 18650 batteries, caused them to explode and/or to catch on fire in the course of their intended use.

45.    Defendants failed to warn the public and consumers of the dangers in the foreseeable and intended use of the electronic cigarette products, including but not limited to the Subject lithium-ion 18650 batteries.

COMPLAINT AND DEMAND FOR JURY TRIAL
PAGE- 9

46.     The Subject lithium-ion 18650 batteries contained a design and/or manufacturing and/or distribution defect when these products were introduced into the stream of commerce by the Defendants.

47.     The Subject lithium-ion 18650 batteries were defective and unsafe for their intended use due to a design and/or manufacturing and/or distribution defect failed to perform as safely as an ordinary customer would expect when used in an intended and foreseeable manner.

48.     The risk of danger in the design of the Subject lithium-ion 18650 batteries outweighed any benefits of the design, and safer alternative designs were available at the time of manufacture and distribution. Therefore, the said products presented a substantial and unreasonable risk of serious injury to the users of said products, or those in the vicinity of said products.

49.     The Subject lithium-ion18650 batteries were unsafe to an extent beyond that which a normal user would contemplate.

50.     As a direct and proximate result of the defects in the Subject lithium-ion 18650 batteries, Plaintiff suffered severe personal injuries.

51.     Defendants and each of them are liable to Plaintiff under Washington's Product Liability Act, RCW 7.72.*et seq.* and/or Oregon product liability law.

**SECOND CAUSE OF ACTION**
*FAILURE TO WARN*
*(Against All Defendants)*

52.     Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-51 above.

COMPLAINT AND DEMAND FOR JURY TRIAL
PAGE- 10

53. At all times material hereto, Defendants and each of them were engaged in the business of selling, manufacturing, fabricating, designing, assembling, distributing, inspecting, warranting, leasing, renting, retailing, wholesaling, or advertising lithium-ion 18650 batteries.

54. At the time that Plaintiff purchased the subject battery, it lacked adequate warnings on the inside and outside of the packaging and no warnings were imprinted on the Subject lithium-ion 18650 batteries regarding the dangers of use, charging, transportation or storage of the Subject lithium-ion 18650 batteries.

55. At the time Plaintiff purchased the Subject lithium-ion 18650 battery, it lacked adequate warnings that would reasonably catch Plaintiff's attention, with regard to the use, charging, transportation or storage of the Subject lithium-ion 18650 battery.

56. At the time that Plaintiff purchased the Subject lithium-ion 18650 battery there were inadequate warnings so as to give a fair indication of the risks of the use, charging, storage and/or transportation of the batteries.

57. At the time that Plaintiff purchased the Subject lithium-ion 18650 battery it lacked adequate warnings of sufficient intensity justified by the magnitude of the risk of the use, charging, storage and/or transportation of the batteries.

58. The Defendants knew that consumers would charge, use, store and transport Subject lithium-ion 18650 batteries.

59. The Defendants did not adequately warn the public and consumers of the dangers involved in the reasonable use and storage, of the said Subject lithium-ion 18650 batteries at issue in this case. Therefore, the Subject lithium-ion 18650 battery presented a substantial and unreasonable risk of serious injury to the users of said products, or those in the vicinity of use.

60. The likelihood that the Subject lithium-ion 18650 battery would cause severe injuries like those suffered by Plaintiff rendered any warnings and instructions inadequate.

COMPLAINT AND DEMAND FOR JURY TRIAL
PAGE- 11

61.     The Defendants could have provided adequate warnings or instructions but did not. Their failure to provide adequate warnings was a proximate cause of injury and loss to Plaintiff.

### THIRD CAUSE OF ACTION
### *PUNITIVE DAMAGES*
### *(Against All Defendants)*

62.     Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-61 above.

63.     At all times mentioned herein, Defendants acted with fraud, oppression, or malice toward Plaintiff, exhibited an intention and willingness to injure Plaintiff or a conscious disregard for the rights and safety of the Plaintiff.  These Defendants are liable for punitive and/or exemplary damages under choice of law principles for the reckless and/or willful disregard of the rights and safety of consumers.

64.     Defendants should be punished and made an example of by imposition of punitive or exemplary damages.

### V.      PRAYER FOR RELIEF

Wherefore, Plaintiff prays for the following relief:

a.   Medical and incidental expenses incurred and to be incurred;

b.   Lost earnings and earning capacity, past and future;

c.   Pain, suffering, emotional distress, disfigurement, and loss of enjoyment of life, past and future;

d.   Punitive damages in an amount to be determined at the time of trial; and

e.   Any other relief as this Court may deem just and proper.

### JURY DEMAND

COMPLAINT AND DEMAND FOR JURY TRIAL
PAGE- 12

Plaintiff demands a trial by jury on all issues so triable.

Dated this 21st day of December

Respectfully submitted,

CORRIE YACKULIC LAW FIRM, PLLC

Corrie Yackulic, WSBA No. 16063
**Corrie Yackulic Law**
110 Prefontaine Place South, Suite 304
Seattle, WA 98104
corrie@cjylaw.com

Angela J. Nehmens
*To Be Admitted Pro Hac Vice*
**Levin Simes Abrams, LLP**
1700 Montgomery Street
Suite 250
San Francisco, CA 94111
Telephone: (415) 426-3000
Facsimile: (415) 426-3001
anehmens@levinsimes.com

*Attorneys for Plaintiff*

COMPLAINT AND DEMAND FOR JURY TRIAL
PAGE- 13